Argued April 4, affirmed May 28, 1918.

# WOODARD *v.* WILLAMETTE VAL. IRR. LAND CO.*

(173 Pac. 262.)

**Vendor and Purchaser—Rescission of Contract by Agreement—Abandonment of Rights.**

1. Where purchaser rescinds contract and sues vendor for money paid thereon and for value of improvements made, vendor by interposing counterclaim for rent, thus recognizing purchaser as tenant, assents to such rescission, and terminates contract, regardless of whether purchaser had good ground for rescission.

---

*As to necessity of mutual consent on right to rescind contract without liability for nonperformance, see note in 30 L. R. A. 40.

REPORTER.

**Vendor and Purchaser—Rescission—Recovery of Purchase Price.**

2.   Where a contract for sale of land has been rescinded by mutual assent, the purchaser, where there is no agreement to the contrary, may recover the amount paid on the purchase price.

   [As to return of purchase money on repudiation of void contract, see note in Ann. Cas. 1914C, 898.]

**Vendor and Purchaser—Abandonment of Contract by Vendor—Rights of Purchaser.**

3.   Where an irrigation company selling land fails to supply the water called for by the contract of sale, the purchaser may elect to rescind the contract and recover what he has paid thereon.

**Vendor and Purchaser—Rescission—Revival.**

4.   Where purchaser rescinding contract sues for money paid thereon, the vendor, by acquiescing in such rescission by interposing a counterclaim and treating purchaser as tenant, terminates the contract, and cannot by waiving such counterclaim revive it.

**Appeal and Error—Review—Harmless Error.**

5.   Where evidence showed a contract had been rescinded by mutual assent, the admission of parol evidence tending to vary the terms thereof, if error, was harmless.

From Marion: PERCY R. KELLY, Judge.

Department 2.

This is an action for money had and received.   The cause was tried to the court and jury and a judgment followed in favor of plaintiff.   Defendant appeals.

The action is founded upon the rescission of a written contract entered into between plaintiff Woodard and the defendant Willamette Valley Irrigated Land Company on August 27, 1913, for the sale by the latter to the former of 17.06 acres of described land in Marion County, with a water right for the price of $4,265, $1,000 of which was paid at the time of the contract, the balance being payable in deferred payments with interest at 6 per cent per annum.   By the terms of this agreement the defendant agreed to furnish a certain amount of water necessary to irrigate the land during the irrigation season of each year between May 1st and October 1st of each year, beginning with

1914. All the details as to the time of payments, as to a conveyance of the land upon the payments being made, the manner of furnishing the water, and other stipulations are set forth in the contract. It was covenanted that the buyer should pay the seller on the first day of April of each year, subsequent to January, 1915, one dollar and a half per acre as maintenance fee for the use of water and pay all taxes levied against the property. The instrument contained a time essence clause and the following provisions:

"That in the event of default being made by said buyer in the payment of any of the sums of money at the times when the same shall become due as aforesaid, or if default be made in any other particular in any of the stipulations on the part of the said buyer herein contained, then, at the option of said seller, its successors or assigns, and after notification by it to that effect, this contract shall become void, and of no effect, and the buyer shall thereupon cease to be entitled to any benefits thereunder, and all payments of money made hereon by the buyer shall be forfeited as liquidated damages for the failure of said buyer to comply with the terms of this contract, and said buyer shall, on demand of said seller, promptly quit and deliver up said premises to the seller."

The written agreement found in the record appears to be plain, full and complete.

About August 10, 1915, plaintiff gave defendant notice of rescission of the contract for the reason that the company had failed, *inter alia,* to supply water for irrigation on May 1, 1914, and he claims such failure continued until July 9th of that year. He demanded a return of the $1,000 paid on the contract and $650 for improvements made by him upon the land, tendered defendant possession and a quitclaim deed of the premises and offered to account to the

company for the rents and profits during his occupancy when it should comply with the demand. Upon defendant's refusal so to comply, plaintiff instituted this suit, alleging, in substance, the facts above stated and that defendant waived plaintiff's payment of April 1, 1915, for water for the said year and extended the time for the payment of interest due as per contract from August 27, 1914, until August 27, 1915; and that plaintiff had fully performed his agreement.

Defendant answered and counterclaimed, denying all the allegations of the complaint "except as hereinafter stated," set forth the contract in full and averred in effect that plaintiff failed to perform his contract in not paying interest due defendant August 27, 1914, and a maintenance fee of $25 for water due April 1, 1915; and that defendant on its part fully performed the contract as modified. As a further answer defendant counterclaimed $170 for the use by plaintiff of the contracted premises from August 27, 1914, to September 1, 1915, whereupon plaintiff filed a supplemental complaint with the additional averment to the purport that without otherwise attempting to terminate the written agreement defendant had disregarded the same by taking possession of the land and had assented to the rescission of the contract by attempting to recover of plaintiff $170 rent while he was in possession of the premises under the terms of the sale contract. Defendant answered the supplemental complaint, as before, and again counterclaimed for the rent.

The reply controverted the answer and counterclaim, except as set forth in the complaint and save as to his occupancy of the premises. Other matters in the respective pleadings will be referred to hereafter.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Maurice W. Seitz* and *Messrs. Carson & Brown,* with oral arguments by *Mr. Seitz* and *Mr. Thomas Brown.*

For respondent there was a brief with oral arguments by *Mr. Samuel M. Endicott* and *Mr. Walter C. Winslow.*

BEAN, J.—The principal assignments of error are: That the court erred in submitting to the jury the counterclaim of defendant; that after plaintiff rescinded the contract defendant acquiesced in such rescission and thereby rendered the same mutual; and that the Circuit Court erred in giving the following instructions to the jury:

"If you find from the evidence that plaintiff's rescission of contract was acquiesced in, provided rescission has been proven, by any conduct or acts of defendant, then I instruct you that plaintiff is entitled to recover the amount he has put into said property, as the evidence presents that view, if at all, to you."

Also: "I further instruct you that defendant cannot recover rent from plaintiff for the time that plaintiff occupied said premises upon any other theory than that said contract was terminated. * * *"

Upon the trial defendant's counsel stated that defendant waived its counterclaim and, as stated in their brief, "maintained that the counterclaim was in the nature of an offset to be set off against the value of the improvements," and defendant introduced evidence as to the reasonable value of plaintiff's occupancy of the land. The plaintiff introduced in evidence defendant's original answer, counterclaiming for rents and profits amounting to $170 for the purpose of showing that defendant assented to the rescis-

sion. It should be stated that the sale contract made no provision for the payment of rent by the buyer under any circumstances.

1. As we view this case, the question of mutual rescission of the contract to purchase is the determinative one. It will be observed that in its two separate answers the defendant by appropriate allegations demanded a recovery from plaintiff of the sum of $170 as the reasonable value of the use of the premises during the time they were occupied by him under the terms of the sale contract. Such a recovery could not be had under any other theory than that the contract had been terminated. There is no claim made on behalf of defendant that it attempted to abrogate the agreement in accordance with the terms thereof or in any other manner; hence, it necessarily follows that the defendant by treating the contract as at an end and demanding rent for the property, thus recognizing the purchaser as a tenant, assented to the rescission asserted by plaintiff. This would be so although the plaintiff might be wrong in his contention to rescind the contract.

2. Mr. Parson in his work on Contracts, vol. 2, Section 678, states the rule thus:

"If either party, without right claims to rescind the contract, the other party need not object, and if he permit it to be rescinded, it will be done by mutual consent."

See also: 13 C. J., § 624, p. 601; *McKenna* v. *McKenna,* 118 Ill. App. 240; *Ralya* v. *Atkins,* 157 Ind. 331 (61 N. E. 726); *Moline Jewelry Co.* v. *Crew,* 171 Ala. 415 (55 South. 144); *Kingman Colony Irr. Co.* v. *Payne,* 78 Or. 238 (152 Pac. 891). Each party having consented to a rescission of the contract (*Hobbs* v. *Columbia Falls Brick Co.,* 157 Mass. 109

(31 N. E. 756), neither can base a claim on such contract except in so far as is necessary to the restoration of the *status quo*. As a general rule, when the contract for the sale of land has been rescinded by the mutual assent and agreement of the parties, the contract is at an end and there being no agreement to the contrary, the vendee, not being at fault, may recover back the money paid on his contracts: 2 Black on Rescission, § 535; 2 Warvelle on Vendors, § 826; 13 C. J., § 627, p. 602; 39 Cyc. 2029; *Vider* v. *Ferguson,* 88 Ill. App. 136, 150; *Bannister* v. *Read,* 1 Gil. (6 Ill.) 100; *Bryson* v. *Crawford,* 68 Ill. 362; *Prentice* v. *Erskine,* 164 Cal. 446 (129 Pac. 585); *Cummings* v. *Rogers,* 36 Minn. 317 (30 N. W. 892); *Maffet* v. *Oregon & Cal. R. Co.,* 46 Or. 443, 457 (80 Pac. 489). At page 457 of the opinion in the last-named case, Mr. Chief Justice Wolverton quotes the following from *Glock* v. *Howard & W. Colony Co.,* 123 Cal. 1, 10 (55 Pac. 713, 69 Am. St. Rep. 17, 43 L. R. A. 199):

"There have been many cases before this court involving the rights of parties to agreements for the sale and purchase of real estate, in which it has been held that, after the parties have rescinded the agreement or mutually agreed to abandon, the vendee may recover the money which he paid in part performance of his contract"—citing cases.

The general rule in regard to restoration of the *status quo* is stated to the same effect in 6 R. C. L., p. 936, § 316.

3. The principle involved as to the right of Woodard, the vendee, to recover the money paid upon his contract to purchase when the vendor company abandoned its contract is settled by the opinion of this court written by Mr. Justice Moore in *Graham* v. *Merchant,* 43 Or. 294, 304 (72 Pac. 1088).

"When a vendor abandons his contract to convey, the vendee, in his choice of remedies, may elect to rescind the contract, and thereupon maintain an action at law to recover what he has paid thereon, as money had and received: *Lyon* v. *Annable*, 4 Conn. 350; *McKinnon* v. *Vollmar*, 75 Wis. 82 (43 N. W. 800, 17 Am. St. Rep. 178, 6 L. R. A. 121); *Glock* v. *Howard & W. Colony Co.*, 123 Cal. 1 (55 Pac. 713, 69 Am. St. Rep. 17, 43 L. R. A. 199)."

In *Mitchell* v. *Hughes*, 80 Or. 574, 584, 585 (157 Pac. 965), Mr. Justice McBride not only cites with approval the case of *Graham* v. *Merchant*, 43 Or. 294 (72 Pac. 1088), but approves the following text from 39 Cyc. page 1354:

"Where one of the parties has abandoned the contract, the other thereupon has a choice of remedies. He may stand upon his contract, refusing assent to his adversary's attempt to rescind it, and sue for a breach, or, in a proper case, for a specific performance, or he may acquiesce in the abandonment and treat the contract as rescinded, and thus effect a dissolution of the contract by mutual and concurring assent of both parties. He cannot, however, treat the contract as abandoned by the other party and at the same time enforce its obligation."

4, 5. Rescission by the parties of a contract to convey contemplates not only destruction of the contract, but also restoration of the parties to their former estate or situation: *Miles* v. *Hemenway*, 59 Or. 318, 338 (111 Pac. 696, 117 Pac. 273). The waiver of the counterclaim and the attempt to convert the same into a recoupment by defendant was ineffectual as a revival of the contract of sale, as after a contract has been rescinded, it can be revived only by the mutual assent of the contracting parties. It matters not what we denominate defendant's demand for rent. The defendant in this case could not alone apply the

pulmotor so as to restore the life of the contract: 13 C. J., § 627, p. 603; 6 R. C. L., § 315, p. 932; *Dixon-Hanson Co.* v. *Svoboda,* 161 Ill. App. 410.

The charge to the jury upon this phase of the case was well within the law. The practical effect of the instructions quoted and complained of was to require the jury, if they found in favor of plaintiff as to the other facts of the case which were fairly proved, to find for plaintiff upon this point, that is, that the contract had been rescinded by mutual assent. There was no error in this part of the charge. As we suggested, this question being the turning point in the case, it renders it of but little avail to consider any of the other questions argued. It was fairly shown and the jury found that the plaintiff had complied with the terms of the contract on his part, and that the defendant failed to furnish plaintiff with water for irrigation during the season of 1914 according to its agreement, and that his crops suffered for want thereof. There is no question raised affecting the finding of the jury as to the value of the improvements made by plaintiff on the land. It is alleged and the evidence admitted tended to show that defendant failed to keep its oral agreement made during the negotiations leading up to the sale contract and not included therein, to equip a cannery and furnish a market for the products raised by the plaintiff on the land. Assuming without deciding that the admission of such evidence for the purpose of showing a further breach of the contract by defendant was error as varying the terms of the written contract, yet as the defendant assented to the rescission of the agreement we cannot see how such evidence could possibly change the result of the deliberations of the jury. It would serve no good purpose if error should be de-

clared to remand this cause for a retrial of an issue which would not affect the decision of the case. The evidence is all contained in the record. Applying Article VII, Section 3, of the Constitution, after a consideration of all the matters contained in the record, we are of the opinion that the judgment appealed from was correct. We find no reversible error in the case and the judgment of the lower court is therefore affirmed.                                          AFFIRMED.

McBRIDE, C. J., MOORE and BENSON, JJ., concur.