Argued and submitted October 12, 1988, remanded with instructions; otherwise affirmed June 21, 1989

BURNESS,
*Respondent,*

*v.*

BRUCE,
*Appellant.*

(E85-2140; CA A47121)

776 P2d 32

Darryl E. Johnson, Roseburg, argued the cause and filed the brief for appellant.

William C. Wolke, Roseburg, argued the cause for respondent. With him on the brief was Wolke & Mays, Roseburg.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Defendant appeals a judgment for plaintiff on his claims for breach of contract, for foreclosure of a security interest and for defendant on his counterclaim. We remand for entry of a judgment not inconsistent with this opinion.

In September, 1980, plaintiff and defendant entered into two contracts. The first was a stock sale agreement in which plaintiff agreed to sell defendant all outstanding common stock in his automobile dealership for $261,635. The second was a noncompetition agreement under which, in exchange for $50,000, plaintiff agreed not to compete with defendant's new dealership. Defendant's performance of both contracts was secured by a pledge of the stock. Under the terms of the two contracts, defendant agreed to make 54 monthly installments of $3,456.20 and $735.29 respectively on the principal amounts owing. In addition to those amounts, defendant also agreed to pay, with each installment, interest on the outstanding balances at 8% per annum. The stock sale agreement also provided that, until defendant's debt was paid in full, defendant would maintain a health insurance policy for plaintiff and his family and would furnish plaintiff with two automobiles for his personal use.

Defendant began making payments on the contracts but paid only the amount due for principal, mistakenly believing that that satisfied his obligation under the contract. Plaintiff accepted the payments, mistakenly believing that they included interest. Not until defendant tendered the final installment did plaintiff realize that no interest had been paid at any time during the payment period. The parties determined that the amount still due as interest on the contracts was $57,636.45. Approximately two months after the payment error was first brought to defendant's attention, plaintiff demanded that the amount still owing be paid within 10 days and also demanded that defendant continue to maintain the health insurance policy and furnish him with two automobiles until payment was made in full. Defendant refused the demand, and plaintiff filed this action. The trial court entered judgment for plaintiff on his claims and ordered foreclosure of

the stock pledge. It also granted several of defendant's counterclaims for miscellaneous items arising out of the stock sale agreement.[1] Defendant appeals.[2]

Defendant's first assignment of error includes a mixture of waiver, estoppel and reformation theories. He argues that, by accepting partial payments over the five-year period, plaintiff either waived his right to demand full payment within the 54-month term of the contract or else should be estopped from demanding payment in full at the end of that period. Although he does not directly argue on appeal that plaintiff is precluded from recovering the full contract amounts, the only assertion made in his amended answer and counterclaims was that plaintiff should take nothing by his claims and should be forced to accept the payments already made as a full and complete satisfaction of his obligations under the contracts.

**1.** We do not agree that plaintiff waived his right to demand full payment at the end of the payment period. Although, as a general rule, a party to a contract may waive performance of a provision included for his benefit, *Alk v. Lanini*, 61 Or App 158, 656 P2d 367 (1982), *rev den* 294 Or 613 (1983), material conditions of the contract cannot be waived. *See Restatement (Second) Contracts* § 84(1)(a), *comment c* at 218 (1979).

"The concept of waiver—including both ordinary and election waiver—has been responsible for substantial erosion of the rule of strict compliance generally applicable to conditions. To keep this erosion in check, the concept of waiver is restricted to conditions that are relatively minor. An owner who has made an option contract to sell his land on condition that he is paid $100,000 cannot waive this condition. Nor can an obligor waive a condition that is material to the likelihood of his having to render his own performance." Farnsworth, *Contracts* 565, § 8.5 (1982).

---

[1] The counterclaims on which defendant prevailed related to damage that plaintiff caused to one of defendant's automobiles and to tax and credit liabilities against which plaintiff had given a warranty in the stock sale agreement. The judgment for defendant on his counterclaims was for $5,541.25.

[2] Although there is virtually no dispute over the material facts in this case, the relief granted by the trial court, foreclosure of the stock pledge, was equitable in nature. Accordingly, we review *de novo*. ORS 19.125(3); *Rainbow Construction Co. v. Olsen*, 64 Or App 699, 704, 669 P2d 814 (1983).

Assuming, without deciding, that plaintiff's acceptance of partial payments over the term of the contract could otherwise have constituted a waiver, we hold that plaintiff nevertheless could not waive his right to receive the full contract price, because that right was a material condition to his own performance.

**2.** We also conclude that plaintiff is not estopped from enforcing the terms of the contracts. Although defendant cites no authority for his estoppel claim, we assume that he is arguing the existence of an equitable estoppel or estoppel by conduct.[3] However, in order for an equitable estoppel to arise, the party to be estopped must have made a false representation with knowledge of the facts and with an intent that the other party rely on the representation. *See Oregon Bank v. Nautilus Crane & Equip. Corp.,* 68 Or App 131, 141, 683 P2d 95 (1984). There is no evidence in this case that plaintiff knowingly made any false representations to defendant with regard to the payment provisions in the contract. Accordingly, the elements of an estoppel are not present.

Defendant also argues that the court should have granted his request for reformation of the contract and allowed him to pay the balance due over some indeterminate period of time. He apparently argues that the prayer in his amended answer and counterclaim was actually a request for reformation to extend the payment period, rather than to provide that only the principal amounts were due under the contract. He contends that his prayer for reformation was akin to a plea in abatement, seeking a reasonable time in which to make up the delinquent payments, and asserts that, as a matter of equity, the trial court should have granted the plea and refused foreclosure. Applying the most liberal construction to defendant's pleadings, we cannot see how his amended answer can be construed as a plea in abatement. Defendant clearly requested in his prayer that plaintiff take nothing by his complaint and that he be forced to accept the installments already made as full payment of the obligations

---

[3] The only other estoppel theory that defendant *might* have been arguing is promissory estoppel. However, a promissory estoppel does not arise unless the party to be estopped has, among other things, made a promise that induces the other party to make a substantial change in its position. *See Bixler v. First National Bank,* 49 Or App 195, 199-200, 619 P2d 895 (1980). There is no evidence in this case that any of those elements are present.

due under the contract. No alternative relief was sought, nor was a time extension even alluded to. We conclude that the trial court did not err by failing to grant a remedy that defendant never sought.

**3.**     Defendant also argues that the trial court erred in granting plaintiff's claims for health insurance premiums and rental car values beyond the 54-month period. Under the terms of the stock sale agreement, defendant promised to provide plaintiff and his family with health insurance coverage and two automobiles "[u]ntil Buyer's debt * * * is paid in full." Defendant argues that, as a matter of equity, the trial court should have excused him from the obligations, because both parties believed that the installments as made had satisfied the terms of the contracts. We do not believe that the equities in this case weigh so favorably for defendant that we should disregard the plain language in the contract. On *de novo* review, we conclude that the trial court was correct in enforcing the provisions beyond the 54-month period.

**4.**     Finally, defendant argues that the trial court erred in excluding nine percent prejudgment interest from the judgment that he was awarded on his counterclaim. Plaintiff concedes that defendant was entitled to prejudgment interest on those claims. We agree and remand for entry of judgment awarding defendant $2,842.66 in prejudgment interest on his counterclaim.[4] His remaining assignments of error are without merit.[5]

Remanded with instructions to enter judgment awarding defendant $2,842.66 as prejudgment interest; otherwise affirmed.

---

[4] After judgment was entered, but before the briefs in this appeal were filed, plaintiff offered to stipulate to an amended judgment awarding defendant prejudgment interest in this amount. Accordingly, we do not consider defendant to be the prevailing party for purposes of costs and disbursements on appeal. ORS 20.310.

[5] After trial, but before judgment was entered, defendant tendered payment by check to plaintiff in an amount less than that prayed for in plaintiff's complaint. A letter accompanying the check stated that it was tendered as full satisfaction of defendant's debt. Plaintiff did not cash the check until after judgment was entered and then filed a partial satisfaction of judgment as of that date. Defendant argues on appeal that the amount awarded in the judgment should have been offset by the amount tendered after trial, but before judgment was entered, and that interest on the amount after offset should have accrued from the date when he tendered the check. Because that argument involves post-trial actions over which the trial court will re-acquire jurisdiction, ORS 19.033(5), we will not consider it for the first time on appeal.