Argued and submitted April 18, reversed and remanded August 8, 2007

OREGON SOUTHWEST, LLC,
an Oregon limited liability company,
*Plaintiff-Respondent,*

*v.*

Joseph KVATERNIK
and Carolynn Kvaternik,
husband and wife,
*Defendants-Appellants.*

Curry County Circuit Court
04CV0408; A127567

164 P3d 1226

Clayton C. Patrick argued the cause and filed the briefs for appellants.

Bruce L. Campbell argued the cause for respondent. With him on the brief was Miller Nash LLP.

Before Landau, Presiding Judge, and Schuman, Judge, and Simpson, Judge pro tempore.

SCHUMAN, J.

**SCHUMAN, J.**

Having determined that an "Owner's Sale Agreement and Earnest Money Receipt" for the sale of real property contained all of the essential terms of a complete agreement and that no unsatisfied condition precedent existed, the trial court granted plaintiff's motion for summary judgment and ordered specific performance. On appeal, defendants contend that a condition precedent—defendants' attorney's review and approval of all documents relevant to the transaction—was never satisfied. We agree with defendants that performance of the sale agreement was contingent on defendants' attorney's review and approval of the documents, that the approval did not occur, that specific performance was inappropriate, and that the court erred in granting plaintiff's motion for summary judgment and denying defendants'. Consequently, we reverse and remand.

Plaintiff Oregon Southwest, LLC, is the successor in interest of Guy Gelbron, the asserted purchaser of two adjacent parcels of property in Curry County.[1] Defendants are the asserted sellers. Three documents are relevant to the parties' dispute. The first document, prepared by Gelbron (an attorney) and signed by defendant Joseph Kvaternik on October 29, 2003, after brief negotiations, is captioned "Terms of Sale" and provides in its entirety:

"Transaction subject to review and approval of all documents by the attorney for Seller and due diligence by Buyer.

"Purchase Price:   $650,000.00

"Down Payment:   25%

"Balance of Price:   Amortized over 10 years. 6% annual interest rate."

After further discussion, the parties on November 17, 2003, signed a second document, also prepared by plaintiff, entitled "Additional Terms of Sale." That document contained no term regarding attorney review and approval; rather, it changed the amortization period from 10 to 20

---

[1] Gelbron is one of two members of Oregon Southwest, LLC. For convenience, we refer to Gelbron and the corporation as "plaintiff."

years, introduced a balloon payment, gave defendants' attorney the option of choosing between a mortgage and a deed of trust, and added some details about zoning and investigations.

The third and final document, signed on November 29, 2003, is a legal publishing company's fill-in-the-blanks form entitled "Owner's Sale Agreement and Earnest Money Receipt" (the Sale Agreement). In addition to filling in the standard details of the particular transaction—purchase price, down payment, interest rate, loan terms, property description, etc.—the parties also added a notation that referred to and incorporated a new attorney review and approval term, as well as the terms of the first two agreements. The notation read: "See Exhibits 'B,' 'C,' + 'E'—all terms incorporated into this agreement and survive the closing." Exhibit B is the first agreement (October 29 Terms of Sale). Exhibit C is the second agreement (November 17 Additional Terms of Sale). Exhibit E contains new terms, one of which is relevant to this dispute:

> "The final language of the promissory note and deed of trust to be executed by Purchaser for the benefit of Seller shall be subject to the review of Seller's attorney to assure that the documents (i) are consistent with the provisions of this agreement, (ii) bestow to Seller a SENIOR FIRST LIEN on the property to secure the balance of the purchase price and (iii) provide that, in the event of Purchaser's default in his payment of the remainder of the purchase price, Seller shall have the exclusive remedy to foreclose and take the property back and retain all prior funds, including the down payment, which had already been paid by Purchaser to Seller."

After signing this November 29 Sale Agreement, defendants went on vacation; when they returned, and before the planned closing, they met with their attorney. He reviewed all of the documents described above, including an unsigned promissory note and trust deed prepared by plaintiff. After the meeting, defendants told plaintiff that they were not willing to sell the property under the terms of the Sale Agreement. Their attorney instead sent plaintiff an alternative agreement that contained financing details different from the ones to which parties had previously agreed.

Plaintiff did not accept the new terms, and defendants did not appear at the scheduled closing. Plaintiff then filed this suit seeking specific performance.[2] Both sides filed motions for summary judgment. The trial court granted plaintiff's, thereby also denying defendants'. This appeal ensued.

■ " 'A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.' " *Hill v. Oland,* 61 Or App 85, 90, 655 P2d 1088 (1982) (quoting *Restatement (Second) of Contracts* § 224 (1981)). To decide whether the court erred in granting plaintiff's motion for summary judgment, then, we must determine the meaning of any condition that the Sale Agreement contained, whether that condition remained unsatisfied, and (if not satisfied) whether it was waived or otherwise excused.[3] If we determine that the Sale Agreement contained an unsatisfied and unwaived condition, we must then determine if that fact precluded specific performance.

■ We begin by focusing on the existence and import of the condition. Whether a condition precedent exists, and what it means, depends " 'upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances.' " *Dan Bunn, Inc. v. Brown,* 285 Or 131, 143, 590 P2d 209 (1979) (quoting *Ross v. Harding,* 64 Wash 2d 231, 236, 391 P2d 526, (1964)). Under that standard, plaintiff's first argument—that the attorney review and approval terms

_____

[2] Defendants claim that plaintiff orally assured them that the transaction would not be consummated until and unless defendants' attorney reviewed and approved the documents. Plaintiff denies that such assurances occurred and also argues that, in any event, evidence of them would be inadmissible under the parol evidence rule. That dispute is not material to our resolution of the issues on summary judgment; the resolution involves only undisputed facts derived from the documents.

[3] The restatement speaks of whether the nonoccurrence of an event is "excused." Much of the case law treats excuse and waiver as nearly synonymous. *See, e.g., Watson v. Miller,* 164 Or App 309, 313-15, 991 P2d 1083 (1999), and *Aurora Aviation v. AAR Western Skyways,* 75 Or App 598, 602-05, 707 P2d 631 (1985). Some cases discuss waiver and excuse separately but treat waiver as one of a number of circumstances in which nonoccurrence of an event is excused. *See, e.g., Schafer et al v. Fraser et ux,* 206 Or 446, 290 P2d 190 (1955), and *Burness v. Bruce,* 97 Or App 298, 301-03, 776 P2d 32 (1989). Plaintiff here argues waiver, so we address the issue in terms of waiver.

from the earlier agreements were attached to the Sale Agreement not as conditions but merely to show a complete record of previous writings—cannot be taken seriously. The unambiguous language of the Sale Agreement—"See Exhibits 'B,' 'C,' + 'E'—*all terms incorporated into this agreement* and survive the closing" (emphasis added)—refutes plaintiff's contention.

■■    More plausible is plaintiff's argument that the Sale Agreement contains two attorney approval and review provisions, with the later superseding the former. The earlier provision comes from Exhibit B, the October 29 Terms of Sale agreement, which states, "Transaction subject to review and approval of *all documents* by the attorney for Seller * * *." (Emphasis added.) The later provision, Exhibit E, provides that "[t]he final language of *the promissory note and deed of trust* to be executed by [plaintiff] for the benefit of [defendants] shall be subject to the review of Seller's attorney * * *." (Emphasis added.) According to plaintiff, those two terms are inconsistent and, as we have held, when a contract contains inconsistent terms, the specific controls over the general. *E.g., Portland Fire Fighters' Assn. v. City of Portland,* 181 Or App 85, 95, 45 P3d 162, *rev den,* 334 Or 491 (2002). Therefore, plaintiff argues, the only operative attorney review and approval term requires review of only two documents, the promissory note and deed of trust (which review, according to plaintiff, actually occurred—a theory we need not and do not reach).

The problem with plaintiff's argument lies in the presumption that the two provisions are, in fact, inconsistent. They are not. Both provisions can be implemented without conflict. The first provision states that the "transaction" is "subject to," that is, will not occur without, approval and review of "all documents." When the parties agreed to that term, they had not yet decided whether the sale would be by a mortgage or by a deed of trust and promissory note. That decision occurred between the execution of Exhibit B on October 29 and the execution of the Sale Agreement on November 29. Thus, the second attorney review and approval provision supplements the first; it specifically refers to documents that were not in existence, and may not have been contemplated, when the first agreement was signed. The

sequence of events, in other words, undercuts plaintiff's theory that the second agreement narrowed, limited, or superseded the first—a theory for which there is simply no textual or contextual support.

Further, adopting plaintiff's theory would require us to give effect to the second provision (requiring review only of the deed of trust and promissory note) but to ignore the first (requiring review of "all documents" relevant to the transaction), contrary to the mandate in ORS 42.230 that, in construing a contract "where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all." It would also, contrary to the same statute, require us to add the word "only," so that the attorney review provision in Exhibit E would state, "The final language of *only* the promissory note and deed of trust * * * shall be subject to the review of Seller's attorney." We therefore conclude that the Sale Agreement contains a provision under which the transaction cannot occur without defendants' attorney's review and approval of all the relevant documents.

■ Plaintiff's next argument appears to be that, even if the attorney review and approval clause in Exhibit B is an operative condition precedent, that clause "would not permit defendants to rewrite the terms of their bargain as they attempted to do" when their attorney made a counterproposal. According to the plaintiff, "[t]he unambiguous language of [the attorney review and approval clause in Exhibit B] simply allowed defendants to have their attorney review and approve documents—it did not give defendants the right to alter the terms of the contract to which they had agreed." That argument is not persuasive. The "unambiguous language" in Exhibit B declares that the transaction does not occur unless defendants' attorney reviews and approves the documents. By proposing financing terms that differed from those that plaintiff drafted, defendants' attorney demonstrated that he had reviewed and *not* approved plaintiff's documents; the attorney's counterproposal could not logically coexist with his approval of the document containing plaintiff's proposal. Nothing in logic or in the text of the Sale Agreement prohibits defendants' attorney from registering disapproval of a document by proposing changes to it.

■     Plaintiff also argues that, when defendants signed the Sale Agreement without their attorney having reviewed and approved the documents, they waived the attorney review and approval condition. That argument fails to recognize that the Sale Agreement contained, as a term, the condition that no transaction would occur until attorney review of "all documents"—including, of course, the Sale Agreement itself.

In sum, the Sale Agreement contained a condition precedent under which the sale transaction would not occur unless and until defendants' attorney reviewed and approved all of the documents relevant to the transaction. Defendants' attorney did not review and approve all of the documents, nor did defendants waive the condition.

Plaintiff finally argues, relying on *Shipler Logging v. Ponderosa Inv.*, 45 Or App 325, 608 P2d 211, *rev den*, 289 Or 587 (1980), that the trial court did not err even if the Sale Agreement contained an unsatisfied and unwaived condition precedent. *Shipler Logging* does not aid plaintiff. In that case, the plaintiff alleged that an earnest money agreement was not a completed contract because it contained an addendum stating, " 'This offer also subject to a mutually agreeable contract between the seller and purchaser. The above stated terms are hereby agreeable to both parties upon signature below.' " 45 Or App at 332. We held:

> "[A]ll the material terms which would have been incorporated into a 'mutually agreeable contract' had been agreed upon between the [sellers] and [buyer]. Therefore, * * * the writing * * * would be a 'mere memorial' of the contract which was already final by the previous mutual assent of the parties to those terms."

*Id.* (citing *Wagner v. Ranier Mfg. Co.*, 230 Or 531, 540, 371 P2d 74 (1962)). The majority did not treat the case as one involving a condition precedent that may or may not have precluded granting specific performance. *Shipler Logging*, 45 Or App at 332 n 3. Rather, the concern was whether the parties had reached a meeting of the minds. The two issues are separate. Whether the parties have reached a meeting of the minds is relevant to the question whether a contract exists. Whether an acknowledged contract contains an unsatisfied

condition precedent is relevant to the question whether the contract must be performed. *Hill*, 61 Or App at 90 (" 'A condition is an event * * * which must occur * * * before performance under a contract becomes due.' "). The *Shipler Logging* court concluded only that the parties' earnest money agreement amounted to a contract.[4] The case neither held nor implied anything about specific performance.

The present case more closely resembles *Higgins v. Bonnett*, 282 Or 725, 580 P2d 180 (1978). In that case, the seller and buyer of property signed a printed form earnest money agreement containing the purchase price and financing terms, with an addendum stating the buyer would execute a land sale contract in the form approved by the seller's attorney, but that if either party rejected the contract, the transaction would not occur. *Id.* at 727. When the buyers were not satisfied with the contract that the sellers attorney prepared, they sued for specific performance. *Id.* at 728. The trial court sustained the seller's demurrer, and the Supreme Court, in affirming, held:

> "[I]t is clear that the parties did not intend the earnest money agreement to constitute the completed agreement. The parties specifically provided that sellers would have prepared 'and approved by seller's attorney in favor of seller' a land sale contract to be submitted to plaintiffs as buyers. If the contract submitted was not approved by plaintiffs, they were entitled to reject it * * *."

*Id.* at 728-29. The clear teaching of *Higgins* is that attorney approval is a condition precedent that, if unsatisfied, defeats a suit for specific performance.

To the same effect is *Flynn v. Hanna*, 204 Or App 760, 131 P3d 844 (2006). *Flynn* also involved a real estate sale agreement and contained an addendum with a condition of attorney approval. The condition read, "Buyer & Seller reserve[ ] the right to have their attorney and accountants approve this transaction." *Id.* at 763. Before the time designated for closing, the defendants sent a letter to the plaintiff that stated, " 'The Addendum provides that the Agreement is

---

[4] Even if *Shipler Logging* could be read as treating the addendum as a condition precedent, it treated it as a redundant condition precedent that added no obligation that was not satisfied when the parties signed it.

conditional on the approval of [defendants'] lawyer and accountant. Please be advised that [defendants'] lawyer and accountant did not approve the transaction.'" *Id.* at 766 (brackets in original). We held that the defendants exercised their right under the condition to have their attorney approve (or disapprove) the transaction and that the attorney did, in fact, disapprove the transaction. *Id.* at 770. Since the condition was not fulfilled, we reversed the trial court's judgment for specific performance compelling the defendants to complete the sale.

In sum, the Sale Agreement provided that the transaction would not occur unless defendants' attorney reviewed and approved all of the documents. That condition remains unsatisfied and unwaived. Plaintiff is not entitled to specific performance, and the trial court erred in granting its motion.

■     Further, the trial court also erred in denying defendants' motion for summary judgment. When a party appeals the grant of a motion for summary judgment and the denial of a cross-motion for summary judgment, the grant and the denial are both subject to review for errors of law if there are no genuine issues as to any material facts. *Cochran v. Connell*, 53 Or App 933, 939-40, 632 P2d 1385, *rev den*, 292 Or 109 (1981). Here, defendants moved for a summary judgment dismissing plaintiff's complaint. Plaintiff filed a cross-motion for summary judgment on its claim for specific performance (but not its claim for breach of contract). The trial court granted plaintiff's motion and entered a limited judgment, leaving unaddressed plaintiff's claim for breach of contract.

■     Our conclusion that the court erred in ordering specific performance necessarily means that defendants had no legal obligation to perform, and therefore erred in denying defendants' motion for summary judgment for dismissal of the claim for specific performance. Defendants' motion for summary judgment requested dismissal of plaintiff's entire complaint, however the trial court's letter opinion stated that "[t]he [m]otions did not address plaintiff's second [breach of contract] cause of action." Defendants did not object to this

finding and the trial court entered an order and limited judgment granting summary judgment to plaintiff as to the specific performance claim. Because the trial court did not rule on the breach of contract portion of defendants' motion for summary judgment, we decide only that summary judgment should be granted to defendants with regard to the specific performance claim. *See* ORS 18.005(13) and ORS 19.205. We note, however, that when a party has no legal obligation to perform a contract, that party cannot be liable for breach of that contract. Accordingly we reverse the trial court's denial of defendant's motion for summary judgment regarding the claim for specific performance, and remand for further proceedings consistent with this opinion.

Reversed and remanded.